IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS APPLEMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No. 24-cv-1421-JMY |
| EXPERIAN INFORMATION SOLUTIONS, INC. and AFFIRM, INC., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

J. Younge                                                                                                 September 13, 2024

## I.   INTRODUCTION

Before this Court is Defendant Affirm, Inc.'s Motion to Compel Arbitration and Stay Action. ("Def. Mot.," ECF No. 25-1.)[1] Defendant Affirm, Inc. moves to stay this case pending arbitration, arguing that Plaintiff Douglas Appleman is subject to two binding and valid arbitration provisions. (*Id*.) Plaintiff opposes the Motion, asserting there was no mutual assent for one of the arbitration provisions, thus making it void as a matter of law. ("Opp.," ECF No. 26). The Court finds this Motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Defendant's Motion will be granted.

## II.   FACTUAL BACKGROUND

On June 5, 2023, Plaintiff contacted third-party Visible by Verizon ("Visible") to add a second phone-line to his account. ("Compl.," ECF No. 1 ¶ 46-47). Through their virtual chatroom, a Visible Representative communicated with Plaintiff to assist him with his order.

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

1

(Def. Mot., Declaration of Lauren Ortega, ("Ortega Decl."), Ex. 3). During this exchange, Plaintiff created an account with Defendant Affirm, Inc. ("Affirm"), an online platform that provides personal loans to consumers to finance purchases through merchants that partner with Affirm, like Visible. ("Def.'s Mot.," ECF No. 25, p. 2).

As part of creating the referenced online account with Affirm, Plaintiff was required to acknowledge and accept Affirm's Terms of Service, which included an arbitration provision ("Clause I"). (*Id*.).[2] Clause I provides that Plaintiff must arbitrate "any dispute or claim relating in any way to… [Plaintiff's] use of the Affirm Services, a product offered or provided by or through the Website or Service, or otherwise arising out of or relating to this Agreement or the Services[.]" (Def. Mot., Declaration of Lauren Ortega, ("Ortega Decl."), Ex. 1 at ¶ 5). Such "Services" includes (1) Plaintiff's use of Affirm's "Website, an Affirm App, or a third-party website in connection with a product or service offered directly by Affirm, as applicable;" and (2) Plaintiff's "use of any other service(s) offered through the Website or an Affirm App, as applicable, including, without limitation, loans and savings accounts[.]" (*Id*., Ex. 1 at ¶ 1).

Affirm's records reflect that after opening an account, on that same day, Plaintiff used Affirm's platform to apply for a loan to finance a purchase from Visible, which was approved on June 6, 2023. The loan agreement included an arbitration clause ("Clause II") that provides in pertinent part the following:

> **Mandatory Arbitration.**
>
> **THIS SECTION AFFECTS YOUR RIGHTS, PLEASE READ CAREFULLY BEFORE AGREEING TO THESE TERMS.** Except as otherwise explicitly provided in this Section, any Loan Holder, and Affirm, Inc. (together with their parent companies, wholly or majority-owned subsidiaries, affiliates, commonly-owned companies, successors, [or] assigns . . . , the "Transaction Parties") and you can elect to resolve any

---

[2] The Terms of Service provided Plaintiff the opportunity to opt out of the arbitration provision by signing and sending an arbitration opt-out notice to the address specified in the Terms of Service. Affirm has no record of receiving an opt-out notice from Plaintiff. (Def. Mot., fn.1).

2

> past, present or future dispute or claim arising from or relating in any way to your loan, this Agreement, or the relationships that result from any of the foregoing, that cannot be resolved directly between you and a Transaction Party, by binding arbitration under the Consumer Arbitration Rules ("the Consumer Rules") of the American Arbitration Association ("AAA"), rather than in court. . . . Except as otherwise explicitly provided in this Section, this broadly includes: any claims based in contract, statute, tort, fraud, consumer rights, misrepresentation, equity or any other legal theory; . . . federal, state and local claims; and claims which arose before the date of this Agreement. . . .
>
> **YOU UNDERSTAND THAT ABSENT YOUR CONSENT TO ARBITRATION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A TRIAL BY JURY.**
>
> . . .
>
> **RIGHT TO OPT OUT:** If you do not want this Arbitration Section to apply, you must send the Loan Holder a signed notice within 30 calendar days after you sign the Agreement. . . .

(Id., Ex. 2, § 32). Despite having the option to opt out from Clause II by signing and sending a written opt-out notice to Affirm, Affirm's records do not reflect receipt of such notice from Plaintiff. ("Def.'s Mot.," p. 4-5).

In the previously referenced virtual chatroom with the Visible Representative, Plaintiff wrote that he was "creating the account with Affirm" and that he had "just placed" an order. ("Ortega Decl.," Ex. 3). However, after what appeared to be a miscommunication of instructions, the Visible Representative told Plaintiff that a separate account would have to be opened to complete his order. (*Id.*; "Compl.," ¶ 48). Frustrated with this request, Plaintiff abandoned his interest in securing a second line and told the Visible Representative to cancel his order. ("Compl.," ¶ 49). In response, the Visible Representative informed Plaintiff of the following: "[t]he loan has not been accepted yet, it will be canceled for sure." ("Ortega Decl.," Ex. 3).

Sometime after June 6, 2023, Plaintiff discovered that the loan from Affirm had not been cancelled by Visible, so he contacted Affirm to dispute the account. ("Compl.," ¶ 49). Plaintiff subsequentially learned that Affirm had provided information about the account to Defendant Experian Information Solutions, Inc. ("Experian"), who in turn reported the loan to Plaintiff's

3

credit file. ("Compl.," ¶ 67-68). Based upon Plaintiff's claim that the reporting on the loan was inaccurate, Plaintiff filed this complaint alleging that Affirm and Experian violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("Compl.," ¶ 12-13). In its Motion to Compel, here at issue, Affirm argues that Plaintiff's claim against Affirm falls within the scope of both the aforementioned arbitration agreements. ("Def. Mot.," p. 11; "Def. Reply," ECF No. 27, p. 2).

### III.   LEGAL STANDARD

In the determination of a motion to compel arbitration, the Court must first decide whether to apply the Federal Rule of Civil Procedure 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP,* 618 F. App'x 114, 117 (3d Cir. 2015). The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted). Under this standard, the Court accepts as true all factual allegations in the complaint to determine whether those facts would relieve the plaintiff of the arbitration requirement. *Id.*; *see also CardioNet, Inc. v. Cigna Health Corp*., 751 F.3d 165, 168 n.2 (3d Cir. 2014) (under the 12(b)(6) standard to a motion to compel arbitration, the court may "consider the substance of the contracts that ostensibly compel arbitration"). Conversely, the Rule 56 standard will apply "when either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti,* 716 F.3d at 774 (internal quotations omitted).

### A. Arbitrability of Clause I is Apparent on the Face of the Complaint

The arbitrability of Plaintiff's claims under Clause I is apparent on the face of the Complaint. When analyzing the arbitrability of a complaint, "an arbitration agreement need not be attached to [it] in order to be 'apparent.'" *Saechow v. Phila. Acad. Health Sys., LLC*, Civ. No. 19-2075, 2021 WL 1210008, at *9 (E.D. Pa. Mar. 31, 2021). "Rather, it simply needs to be relied upon or incorporated in the complaint." *Id.* Here, the Court will apply the Rule 12(b)(6) standard in considering Clause I because it is obviously integrated throughout the Complaint so it is unnecessary to consider the Rule 56 standard.[3]  Furthermore, because this motion can be resolved under Clause I, this Court will decline to address the enforceability of Clause II.

While the Complaint does not directly reference Clause I, the allegations in the filing "stem from Plaintiff['s] use of [Affirm's] online platform." *Caimano v. H&R Block*, No. CV 23-3272, 2024 WL 3295589, at *8 (E.D. Pa. July 3, 2024). The Complaint alleges that Plaintiff underwent a "process of ordering [a] second phone and phone line" with Visible, learned that an additional account would be necessary to complete his order, and then decided to cancel his order. ("Compl.," ¶ 48, 52). This process, according to the Complaint, involved both Visible and Affirm, as Visible "offer[ed] financing for new phones to its customers through" Affirm. ("Compl.," ¶ 51). In essence, the Complaint describes Plaintiff using, and later canceling, Affirm's services. The Complaint goes on to allege that Plaintiff "didn't have an Affirm account," but also admits that Plaintiff received "bills from Affirm" and "realized [that] the Affirm account was for the Visible phone that he cancelled." ("Compl.," ¶ 55-57). Affirm alleges that the process of successfully executing the cancellation of an order with Affirm and

---

[3] Neither party addressed whether the arbitrability of Clause I is apparent on the face of the Complaint.

Visible would have "require[d] an online user to agree to the [Term's of Service] and acknowledge [Clause I] therein." *Camiano*, 2024 WL 3295589, at *8. Affirm pleads "that it would not have issued the Account if Plaintiff had not accepted the Terms of Service[, which] include[s] an arbitration provision." ("Def. Mot.," p.2). The Terms of Services, governing the use of Affirm's services that are mentioned throughout the Complaint, are "clearly integral to [Plaintiff's] claims." *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315 (E.D. Pa. 2017).

Because arbitrability is apparent on the face of the Complaint and Plaintiff has not responded to the Motion with additional reliable facts sufficient to place Clause I at issue,[4] the Court will review the Motion under the Rule 12(b)(6) standard. *See* Fed. R. Civ. P. 12(b)(6). Under this standard, the Court accepts as true all factual allegations in the Complaint and its supporting documents. *See Guidotti*, 716 F.3d at 776; *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (in applying the 12(b)(6) standard to a motion to compel arbitration, the court "accept[s] as true the factual allegations set forth in the Complaint" and may "consider the substance of the contracts that ostensibly compel arbitration.").

## IV.    DISCUSSION

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Pursuant to the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing FAA, 9 U.S.C. §§ 3, 4).  However, "[a]rbitration is strictly a matter of contract" and is thus governed by state law.

---

[4] Plaintiff has only provided facts that could place Clause II at issue, but as mentioned, because this motion will be resolved solely under the scope of Clause I, arguments regarding the enforceability of Clause II will not be addressed.

6

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999). "The federal policy encouraging recourse to arbitration requires federal courts to look first to the relevant state law of contracts, here [Delaware], in deciding whether an arbitration agreement is valid under the FAA." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 213 (3d Cir. 2003).[5] Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Sanford v. Bracewell & Guiliani, LLP,* 618 F. App'x 114, 117 (3d Cir. 2015); *see also Trippe Mfg. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) ("When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability.").

### A.     Clause I is Valid and Enforceable

The Arbitration Clause is valid and enforceable under Delaware law. Under the FAA, the Court must enforce an arbitration agreement that is otherwise valid and enforceable under ordinary contract principles of the relevant state law. *See China Minmetals Materials Imp. & Expo. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003). Affirm's records indicate that Plaintiff created an Affirm account, which, according to Affirm's business practices, would not have been created if Plaintiff did not accept Affirm's Terms of Service. ("Mot.," p. 2). This agreement included an arbitration provision that Plaintiff was given the opportunity to opt-out of, but according to Affirm's records, Plaintiff declined to exercise his right to opt-out. (*Id.*)

---

[5] While neither party briefed which state law should be applied to Clause I, Affirm included the Terms of Service in their motion, which indicated the following: "Except as provided in Section 5 (Mandatory Arbitration) the laws of the State of Delaware govern your access to, and use of, the Services and the terms of this Agreement." The arbitration agreement in Section 5, which we have defined as Clause I, only includes one exception to the application of Delaware Law— individuals who are "covered borrower[s] as defined by the Military Lending Act, 10 U.S.C. § 987."

Furthermore, Affirm attached the Terms of Service, which included Clause I, to its motion, ("Ortega Decl.," Ex. 1 at ¶ 5), and Plaintiff did not address its authenticity nor whether he is bound by its terms. ("Opp.," ECF No. 26).

### B. Plaintiff's Claims Fall Within the Scope of Clause I

Because the Clause I is valid and enforceable under Delaware law, the final inquiry in resolving the Motion is whether Plaintiff's claims fall within the scope of that provision. *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993). A claim is within the scope of an arbitration clause "[i]f the allegations underling the claims touch matters covered by an arbitration clause in a contract[.]" *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) (quotations omitted). Because "federal policy favors arbitration," the "[C]ourt [will] resolve[] doubts about the scope of an arbitration agreement in favor of arbitration." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001).

Here, Plaintiff's claims against Affirm fall squarely within the coverage of Clause I. As previously outlined, Clause I in Affirm's Terms of Service requires that "any dispute or claim" related to the Plaintiff's "use of the Affirm Services" must be arbitrated ("Ortega Decl.," Ex. 1 at ¶ 5). Clause I defines "Services" as (1) Plaintiff's use of Affirm's "Website" and "Affirm App," and (2) Plaintiff's "use of any other service(s) offered through the Website or an Affirm App, as applicable, including, without limitation, loans and savings accounts[.]" (*Id.*). Plaintiff's claim that Affirm violated 15. U.S.C. § 1681s-2(b) stems from Plaintiff's use of Affirm's services, including the alleged application for and cancelation of a personal loan from Affirm. ("Compl.," ¶ 157-162). This claim undoubtedly falls within the scope of what is arbitrable in Clause I.[6]

---

[6] Plaintiff has not presented argument to the contrary.

Accordingly, Plaintiff's claims against Defendants in the Complaint are subject to a valid and enforceable arbitration clause, and the Court will compel arbitration of Plaintiff's claims.

## V. CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion to Compel Arbitration and Stay Proceedings. This case will be stayed pending the outcome of arbitration. An appropriate Order will follow.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**